PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MICHELLE J. KANE (CABN 210579)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   FAX: (510) 637-3724
   michelle.kane3@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NOAH KANAYE BAUER, <br><br> Defendant. | CASE NO. 4:25-cv-70294 <br><br> UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRETRIAL DETENTION |

## INTRODUCTION

Defendant Noah Bauer has been charged with unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o). The "machinegun" in question is a conversion device sometimes called an "auto sear" or "switch," designed and intended to convert a semiautomatic handgun to automatic firing. Bauer has admitted to 3D printing the conversion device at home.

In addition to that device, he has also 3D printed Glock-style pistol frames and built a complete Glock-style handgun. When he was arrested after being seen racking the slide of his handgun in a local grocery store, Bauer admitted to carrying the weapon in public to practice for carrying live ammunition.

A search of his home revealed that he has been researching mass shootings and attempting to find locations with significant Jewish populations. In January 2025, *after* Brentwood police seized the

illegal machinegun conversion device from his home, Bauer continued exploring uses for such devices. In the last 30 days, Bauer has been researching mass shootings, including the story of Elliot Rodger, who in 2014 committed the horrific murders in Isla Vista, California, and has become an underground hero to fringe communities online.

Because Bauer has demonstrated that he is willing to manufacture firearms, has manufactured an illegal conversion device to turn those firearms into automatic weapons, and spends his time online researching mass shootings and mass shooters, he poses a clear and convincing danger to the community and should be detained pending trial.

## BACKGROUND

### I. OFFENSE CONDUCT

On September 6, 2024, the Brentwood Police Department received a call reporting that someone had seen two individuals inside the Raley's grocery store holding a black handgun. The caller reported that someone had seen one of them pull the slide of the handgun to the rear, potentially chambering a bullet.

When Brentwood police officers responded to the store, they found defendant Noah Bauer and another individual, C.B., in one of the aisles. When Bauer saw the police, he attempted to conceal a black handgun tucked into his waistband and started walking away. After the police called to Bauer and C.B. to stop, they did and were detained. A search of Bauer revealed a black handgun in his waistband. The Brentwood police officers examined the handgun and saw that there were no serial numbers on it and that it appeared to be 3D-printed. Brentwood police arrested Bauer for violations of Cal. Pen. Code §§ 25400(A)(2) (Carrying a concealed firearm), 26350(a)(1)(A)(Openly carrying an unloaded handgun), and 24610 (Manufacture, import, sale, supply, or possession of an undetectable firearm).

After further examination, Brentwood police found that the frame of the firearm appeared to be 3D printed and that it had all the mechanical parts needed to fire, including a firing pin. It held a 9 mm, 17 round magazine. The gun, a Glock-style semiautomatic pistol, appeared to be in working order.

After being read his *Miranda* rights, Brentwood police interviewed Bauer. He admitted to 3D printing the frame and building the firearm with additional parts that he ordered online. Bauer said he was carrying the gun to "practice" because he wants to carry one with live ammunition.

1    Brentwood police obtained Bauer's consent to search his home (where he lives with his family).
2    They found three 3D-printed pistol frames and a machinegun conversion device, also known as an "auto
3    sear" or "Glock switch." Bauer consented to the police officers viewing his computer. They saw files on
4    the computer related to machinegun conversion devices. When police asked Bauer about what such
5    devices were for, Bauer said, "to make it shoot faster," and agreed that it would make a weapon "fully
6    automatic." Police also observed multiple files on his computer related to firearms and conversion
7    devices and found the 3D printer with files for producing a machinegun conversion device.

## II. ADDITIONAL EVICENCE

### A. Brentwood Police Department Search

During the search, Bauer showed Brentwood police the Telegram channels on his computer. Some of the channels to which Bauer was subscribed published known antisemitic and white supremacist content, including Holocaust denial, "race purity" arguments, and "great replacement" conspiracy theories. Brentwood police also viewed Bauer's account on X (formerly known as Twitter) open on his web browser, where he used the handle "white advocate" and the username "beastmode6600," with a note reading "pro white," as shown in the image of his screen below:



When Brentwood police asked him about his "white advocate" handle, he said it was just a "funny" name. He then told the police that "Jews:"

"stick together"

"are kind of ruining the country"

"They chair the federal reserve"

"they control both political parties"

"they are responsible for pornography . . . they own all the porn sites"

"and a myriad of other stuff . . . there seems to be sort of a trend there"

He told the police that his beliefs about Jews arose while watching YouTube.

In addition to following and consuming content, Bauer "reposted" disturbing content. For example, the image below, a photo taken of his computer screen by Brentwood police, demonstrates that he reposted a user saying "it literally never happened" in relation to a "meme" with a quote from former Nazi colonel Otto Remer denying that the regime used Zyklon B gas to murder Jews in concentration camps:[1]

---

[1] Remer was convicted in Germany and sentenced to 22 months of imprisonment for inciting hate, violence, and racism for his lies about the Holocaust. *See* https://www.nytimes.com/1997/10/09/world/otto-remer-84-nazi-officer-helped-foil-anti-hitler-plot.html (last visited March 12, 2025).

MEMO. RE PRETRIAL DETENTION   4
4:25-cv-70294



Following their detention, Bauer's brother said that Bauer does not agree that it should be illegal for him to be in possession of a firearm in public and that he has an "interest in firearms." His brother said he would "not be surprised" if Bauer had watched videos of people "dying and being killed." His brother said he would be "shocked" if Bauer has not watched videos of cartels or terrorists murdering people.

**B. FBI Search**

On March 5, 2025, the FBI executed a search warrant at Bauer's home. While executing the search warrant, Bauer's computer was open with a web browser displaying a ChatGPT window. The conversation history showed that, in the last month, Bauer had asked ChatGPT multiple questions about mass murderer Elliot Rodger, including "how famous is Elliot?".[2] Bauer's ChatGPT history also indicated questions about historical expulsions of Jews from various countries including Italy, Spain, and France. In addition, the review of the computer indicates that Bauer asked ChatGPT the following questions targeting Jewish populations:

"are there any majority jewish congressional districts?"

"where do most hasidic jews live"

"why are so many jews pedophiles?"

"what weapons do jews use?"

In addition to questions regarding Jewish populations, Bauer also asked ChatGPT about weapons and armor including:

"which gun[e]s were designed to be used while concealed in a briefcase?"

"what is the most powerful handgun in the world?"

"what is the highest level armor a civilian can buy in america?"

"what guns can penetrate police vests?"

"I need something that can penetrate level 4 armor"

Bauer's ChatGPT questions also showed a focus on mass shootings, including the following

---

[2] Elliot Rodger killed six people in a stabbing and shooting spree in Isla Vista, California, in May 2014. He has become "virtually canonized" by online communities featuring misogynistic content and which often call for violence, particularly against women. *See* https://www.bbc.com/news/world-us-canada-43892189 (last visited March 12, 2025).

series from 2024:

"What is the definition of a mass shooting"

"Going by that definition, there has never been a mass shooting in Rhode Island"

"Wyoming has never had any either"

"I believe it has to do with Wyoming's homogeneous population"

## ARGUMENT

### I. 18 U.S.C. § 3142

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those four factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). In this case, based on an individualized evaluation of the defendant, each of the four factors outlined in § 3142(g) militates in favor of detention.

### II. SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

#### A. The Nature and Circumstances of the Offense

As for the nature and circumstances of the charged offense, under § 3142(g)(1), this factor weighs in favor of detention. Defendant manufactured a machinegun conversion device. He did not do

so for idle interest—his electronic records and the fact that he also manufactured a handgun demonstrate that he understood its significance and intended the two to work together. Bauer displayed the handgun in public and told police officers that he was practicing for carrying live ammunition. Bauer searched online repeatedly for information about ammunition that would pierce "armor." His statements to Brentwood police demonstrate his understanding of what the device he had manufactured could do. There is no explanation for his possession of the conversion device other than a desire to have an illegal, fully automatic firearm. Bauer has extensively researched mass shootings and clearly understands the significance of possessing a fully automatic firearm.

### B. The Weight of the Evidence

As for the weight of the evidence, under § 3142(g)(2), this factor also favors detention because the evidence of the defendant's guilt is overwhelming. Bauer had the machinegun conversion device at his home, he knew its intended use, and Brentwood police found his 3D printer loaded with the files for printing a conversion device. Not only did Bauer have the conversion device, but he had 3D printed and constructed a complete handgun of the type that the device was intended to convert into a fully automatic weapon, capable of mass murder with a single trigger pull. Defendant's own recorded statement revealed that he understood the device's purpose—to make the fun "shoot faster." His own statement also confirmed that he had ordered the required parts online to make his 3D printed frame into a functioning weapon. This case is thus supported by clear and direct evidence of defendant's guilt.

While this factor is deemed the least important by case law, the judge is still "require[d]" to consider it, and it can help establish dangerousness. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released). The weight of the evidence supporting the present charge also demonstrates the ease with which Bauer could construct a similar weapon at any point. In summary, the weight of the evidence against defendant is both reliable and strong, and this factor supports pre-trial detention. *See United States v. Tortora*, 922 F.2d 880, 886 (1st Cir. 1990) (finding that "evidence of [defendant's] guilt is both substantial and credible" because the prosecution "is based in large part on direct evidence, including tape recordings").

//

### C. History and Characteristics of the Defendant

It is true that defendant has no criminal history, however, a full examination of his history and characteristics favors detention. The search of his house and the subsequent investigation have revealed a disturbing fixation on Jewish people, mass shooters, and mass shootings that make him a significant concern for imminent violence. Bauer's manufacture of a handgun alongside an illegal machinegun conversion device demonstrate his ability to carry out the type of mass shooting that he has been researching:

- Defendant searched for "sweden mass shooting," likely a reference to Anders Behring Breivik, a Norwegian neo-Nazi who carried out attacks in 2011 in which he killed eight people by detonating a van bomb in Oslo, and then killed 69 participants at an island summer camp in a mass shooting.
- Defendant also searched for "Russian mass shooting 2023," likely a reference to the March 2024 terrorist attack at the Crocus City Hall music venue in Moscow that killed at least 145 people.

In an interview, defendant's brother noted that he and Bauer had experience at gun ranges as Boy Scouts. His brother also noted the likelihood of Bauer consuming violent online content. Since his detention by Brentwood Police in September 2024, defendant has continued to research guns and violence, with a continuing focus on antisemitism and demonstrated interest in misogyny and white supremacy. On December 14, 2024, defendant searched for "Where to slice someone on the neck for an instant kill." As of January 2025, defendant continued to search for information on machinegun conversion devices and other firearms related content. Defendant's history is a flashing red light signaling a troubled young man fixated on mass violence with the capacity to commit it.

### D. The Nature and Seriousness of the Danger to Any Person or to the Community

Defendant poses a significant danger to the community. As described above, defendant took a homemade handgun out in public to practice for handling live ammunition. He manufactured a machinegun conversion device that would make that firearm fully automatic. He searched for information online regarding ammunition that could pierce body armor. In January 2025, months after the Brentwood Police Department arrest and search and knowing fully well that machinegun conversion

devices were illegal, defendant was again on the Internet viewing such sites as "Gen 1-3 Incognito Auto Sear Invisible Auto Switch Stainless Steel for Glock." Defendant has the knowledge and capacity to inflict significant violence, has demonstrated a disturbing antisemitic ideology, and poses a significant danger to the community.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion to detain defendant Bauer pending trial.

DATED: March 17, 2025                                  Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney


_____/s/_____
MICHELLE J. KANE
Assistant United States Attorney