CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

RICHARD EWENSTEIN (CABN 294649)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Richard.Ewenstein@usdoj.gov
Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NOAH KANAYE BAUER,<br><br>Defendant. | CASE NO. 4:25-CR-00079-AMO<br><br>UNITED STATES' SENTENCING MEMO |

## I. INTRODUCTION

As agreed to in the parties' Plea Agreement, the government submits that a below Guidelines sentence of 15 months of imprisonment is the appropriate sentence in this case. While the offense conduct in this case was serious and there is a need to promote respect for the law, afford adequate deterrence, and protect the public from future crimes committed by the defendant, there also are mitigating factors such as Noah Bauer's age and impressionability that warrant a modest downward variance in this case along with strict conditions of supervised release.

As the Court will recall from motion practice and trial, on September 6, 2024, Bauer was found in possession of a 3D-printed firearm, three 3D-printed firearm frames, and a 3D-printed machinegun

conversion device (an "MCD") that was specifically designed and intended to covert a semiautomatic firearm into a fully automatic firearm.

As a result, on March 10, 2025, Bauer was charged via criminal complaint with violation of 18 U.S.C. § 922(o) – Possession of a Machinegun, Dkt. 1, and was later charged via Indictment with the same crime. *See* Dkt. 12.

The Court held a jury trial in December 2025 and declared a mistrial on December 11, 2025, after the jury was unable to reach a verdict. On April 20, 2026, Bauer pled guilty to Count One of the Indictment and is scheduled for sentencing on September 21, 2026, before the Honorable Araceli Martínez-Olguín.

## II. OFFENSE CONDUCT

As the Court will recall from trial, on September 6, 2024, the Brentwood Police Department (BPD) responded to a Raley's Grocery Store in Brentwood, California in response to 911 calls about two men inside of the grocery store holding a black handgun inside of the store. Presentence Investigation Report ("PSR") ¶ 12. Upon their arrival, the responding BPD officers encountered Bauer and his twin brother inside of the store. *Id.* at ¶ 13. The responding officers detained the brothers and found an unloaded black 3D-printed Glock-style firearm in front waistband of Bauer's pants. *Id.*

During post-arrest interviews of the two men, BPD learned that Bauer was 3D-printing firearms and firearm parts at his home. *Id.* at ¶ 14. With his consent, BPD conducted a search of Bauer's bedroom, which was in a home that Bauer shared with his parents and twin brother. *Id.* at ¶¶ 14, 15. During the search, BPD located the Bauer's 3D printer in the corner of his bedroom and three 3D-printed pistol frames on his bed. *Id.* ¶ 15.

Upon examination of the 3D-printer, one of the BPD detectives saw files for a "SEAR TIP" and "SEAR BODY" on the printer. *Id.* at ¶ 17. Recognizing what the files were, the detective asked to see the computer program associated with the 3D-printer and was taken to Bauer's computer which was in a common area of the house. *See id.* at ¶ 18.

While reviewing the computer, the BPD detective found a 3D-printer schematic for an MCD and asked Bauer what that device was used for. Trial Exhibit 36c-e. Bauer responded, "To make it shoot faster," and the detective replied, "Fully automatic, right?" Bauer responded, "Yeah." PSR at ¶ 16. After this discussion, Bauer walked the detective to his bedroom, located the MCD, and handed the two pieces

of the MCD to the detective. Trial Exhibit 36c.

The MCD was later determined to be a "machinegun"—i.e., a combination of parts designed and intended for use in converting a weapon into a machinegun—by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). PSR at ¶ 23. During testing of the MCD, however, it broke. *Id*. at ¶ 24. According to the examining officer, the polymer that Bauer used to 3D print the MCD was not sufficiently resilient to withstand the force exerted by the pistol during testing. *Id*.

## III. APPLICABLE GUIDELINES CALCULATION

The parties and Probation all agree that Bauer's Total Offense Level is 15:

| | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| Base Offense Level | U.S.S.G. §§ 2K2.1(a)(5) *Offense involving a firearm described in 26 U.S.C. § 5845(a) (i.e., a machinegun)* | 18 |
| Specific Offense Characteristics | n/a | n/a |
| Acceptance of Responsibility | U.S.S.G. § 3E1.1 | - 3 |
| **Total Offense Level** | | **15** |

Plea Agreement ¶ 7; PSR ¶¶ 33-42. The government also agrees with Probation that Bauer has no criminal history, making his Criminal History Category I and yielding a Guidelines range of 18 – 24 months of imprisonment.

## IV. DISCUSSION

### A. Applicable Law

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id*. at 991-93.

Under Section 3553(a), in arriving at the appropriate sentence for Bauer, the Court should consider the following factors applicable to this case, among others:

(1) the nature and circumstances of the offenses and the history and characteristics of the

defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to protect the public from further crimes of the defendant; and

(5) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

**B. A Sentence of 15 Months Is Sufficient but Not Greater than Necessary to Comply with Section 3553(a)**

**i. The Nature and Circumstances of the Offense**

While Bauer's offense conduct was serious—i.e., he knowingly printed an unlawful device that has the potential to turn a semiautomatic firearm into a fully automatic firearm—the nature and circumstances of Bauer's offense conduct have both aggravating and mitigating aspects. On the one hand, Bauer possessed an MCD in his own home and unattached to a firearm, which is a type of possession that poses relatively less danger to the public than possession of an MCD in public and/or while attached to a firearm. However, Bauer did possess and display a 3D-printed firearm (to which the MCD could be attached) in the middle of a grocery store. Although Bauer was not charged with possession of that firearm in this case, it is conduct relevant to the offense because Bauer made that firearm using the same printer as the MCD, possessed both the firearm and MCD on the same day, and the MCD was designed to be used with firearms of the type that Bauer had in the grocery store.

As the Court will recall from the jury trial in this case, the MCD broke when tested. This fact cuts in Bauer's favor insofar as it reduces the risk that the public was in danger from Bauer's possession of the MCD, but it does not change Bauer's clear intention in creating and possessing the MCD.

**ii. The History and Characteristics of the Defendant**

Bauer has no criminal convictions or arrest history. However, Bauer's failure on pretrial release, leading to his pretrial detention, weighs against him. During the pendency of his case, Pretrial Services filed three violation memorandums, one informational memorandum, and one arrest warrant. PSR at ¶¶ 6-10. The last of Bauer's violations was by far the most serious. In late December 2025, following the mistrial in the jury trial before this Court, Bauer used racial slurs and made comments that his therapist

viewed as hateful and threatening. PSR at ¶ 10. Bauer has been in custody since these violations.

**iii. The Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment for the Offenses and Afford Adequate Deterrence**

The recommended sentence is a modest variance below the low end of the Guidelines. This term of incarceration—followed by a term of supervised release in which Bauer will be closely monitored—appropriately reflects the offense's seriousness while not over-punishing a defendant with no prior convictions.

**iv. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

As the Court is aware, Bauer is an impressionable young man who has a demonstrated interest in concerning ideologies and subject matter areas. PSR at ¶¶ 7 (interest in serial killers and mass shootings), 25 (computer search history that includes searches related to "incel" culture, mass shooters, MCDs, and areas in which Jewish people are concentrated). Obviously, the government is concerned at the possible connection between these areas of interest and Bauer's possession of firearms and the MCD he printed in this case.

In the government's view, however, the best way for the Court to protect the public from any possible future crimes by Bauer is to impose the recommended sentence and then ensure that Bauer is strictly monitored and supported by U.S. Probation during his term of supervised release. The government understands that, if the Court accepts the parties' joint recommendation, Bauer is likely to serve the modest balance of his custodial sentence in local custody rather than a Bureau of Prisons facility. This result is likely to end up benefitting not only Bauer but also public safety because it will avoid the possibility that Bauer's beliefs or ideologies become more entrenched in a prison setting.

**v. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Bauer does not have an acute need for educational or vocational training, medical care, or other correctional treatment. Bauer has a high school diploma and has completed some college. PSR at ¶ 73. Although he has some physical and mental health challenges, they are modest and—to the extent they need treatment at all—can be treated either in or out of custody. PSR at ¶¶ 64-84.

As discussed above, Bauer's best chance for success and to rejoin society as a law-abiding, productive citizen is to complete his incarceration in local custody and be closely supervised following his release. Bauer has a plan for his life after his release (transfer to a four-year university and a career in computer science). PSR at ¶ 73. The parties' agreed-upon disposition would best situate Bauer to pursue these goals.

In sum, the Section 3553(a) factors pull in both directions and therefore support the recommended disposition, which is just below a low-end Guidelines sentence.

## V. <u>CONCLUSION</u>

With full consideration of all the sentencing factors set forth in Section 3553(a), the United States respectfully requests that the Court impose a sentence of 15 months of imprisonment, three years of supervised release with the special conditions proposed by Probation, a $100 special assessment, and forfeiture of the items listed in the PSR and Plea Agreement.

DATED: September 14, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
RICHARD EWENSTEIN
AMANI S. FLOYD
Assistant United States Attorneys